**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**


DONALD DOMBY,

      Plaintiff,

v.                                                        Civil No. 05-CV-10090-BC

COMMISSIONER OF                         DISTRICT JUDGE DAVID M. LAWSON
SOCIAL SECURITY,                         MAGISTRATE JUDGE CHARLES E. BINDER

      Defendant.

_____/


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**


**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence fails to support the Commissioner's determination that Plaintiff is not disabled.   Accordingly, IT IS RECOMMENDED that PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE GRANTED, DEFENDANT'S MOTION FOR REMAND also BE GRANTED, but that the FINDINGS OF THE COMMISSIONER BE REVERSED, and the case REMANDED for an award of benefits.


**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case has been referred to this Magistrate Judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability

insurance benefits.  This matter is currently before the Court on Plaintiff's Motion for Summary Judgment and Defendant's Motion to Remand.

Plaintiff was 51 years of age at the time of the most recent administrative hearing and has completed a high school education.  (Tr. at 204.)  Plaintiff's relevant work history includes 28 years' work for General Motors.  (Tr. at 205.)

Plaintiff filed the instant claim on March 27, 2002, alleging that he became unable to work on October 5, 2001.  (Tr. at 50-52.)  The claim was denied at the initial stage.  (Tr. at 25.)  In denying Plaintiff's claim, the Defendant Commissioner considered bilateral carpal tunnel syndrome[1] and disorders of the back as possible bases of disability.  (*Id.*)

On May 20, 2004, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Thomas Walters, who considered the case *de novo*.  In a decision dated August 25, 2004, the ALJ found that Plaintiff was not disabled.  (Tr. at 14-24.)  Plaintiff requested a review of this decision on September 2, 2004.  (Tr. at 10.)

The ALJ's decision became the final decision of the Commissioner on March 3, 2005, when the Appeals Council denied Plaintiff's request for review.  (Tr. at 5-7.)  On March 23, 2005, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.      Standard of Review**

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and

---

[1]Carpal tunnel syndrome is defined as "a condition resulting from pressure on the median nerve as it traverses the carpal tunnel, usually by fibers of the traverse carpal ligament.  The condition is characterized by pain, tingling, burning, numbness, etc. in the areas supplied by the nerve, i.e., in the skin of the palm, fingers, wrist, etc."  1 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE C-95.

whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam). The Commissioner is charged with finding the facts relevant to an application for disability benefits. A federal court "may not try the case de novo, . . . ." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir.1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). The scope of the court's review is limited to an examination of the record only. *Brainard,* 889 F.2d at 681. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 681 (citing *Consolidated Edison Co. v. NLFB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216, 83 L. Ed. 2d 126 (1938)). The substantial evidence standard "'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference from the courts.'" *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

The ALJ, upon whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write to support his or her decision. *Newton v. Sec'y of Health & Human Servs.*, No. 91-6474, 1992 WL 162557 (6th Cir. July 13, 1992). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which

3

might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review). Significantly, under this standard, a reviewing court is not to resolve conflicts in the evidence and may not decide questions of credibility. *Garner,* 745 F.2d at 387-88.

### C.    Governing Law

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen*, 800 F.2d at 537.

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). "[B]enefits are available only to those individuals who can establish 'disability' within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "Disability" means:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  One is thus under a disability "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 1382c(a)(3)(B).

A claimant must meet all five parts of the test set forth in 20 C.F.R. § 404.1520 in order to receive disability benefits from Social Security.  The test is as follows:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, benefits are denied without further analysis.

Step Three:  If the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled without further analysis.

Step Four:  If the claimant is able to perform his or her previous work, benefits are denied without further analysis.

Step Five:  If the claimant is able to perform other work in the national economy, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920.  *See also Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n.2 (6th Cir. 1995); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 687-88 (6th Cir. 1985).  "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled."  *Preslar*, 14 F.3d at 1110.  "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the

5

burden transfers to the [Commissioner]." *Id.* "Step five requires the [Commissioner] to show that the claimant is able to do other work available in the national economy. . . ." *Id.*

### D.    Administrative Record

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff was seen by Dr. Robert Niedbalski, D.O., at the Perry Family Practice in Perry, Michigan, on February 26, 2001. Plaintiff was being treated for hyperlipidemia,[2] elevated cholesterol and contact dermatitis. Plaintiff's medications were reviewed, and his cholesterol medication was changed. (Tr. at 130.)

On May 7, 2001, Dr. A. George Dass, orthopedic surgeon, examined Plaintiff. In a letter to a doctor at the Flint Truck Assembly Plant, Dr. Dass noted that Plaintiff had undergone carpal tunnel surgery on his right hand in 1993 "with pretty good results," and that at the present time he was complaining of numbness and tingling in his left hand. (Tr. at 107.) Tinel's[3] and Phalen's[4] and other tests were all positive for carpal tunnel syndrome on the left. An EMG and nerve conduction study performed in March 2001 showed severe carpal tunnel on the left. (*Id.*) Plaintiff stated that he would like to proceed with surgery, but on August 1, 2001, Plaintiff returned with more questions regarding the procedure and told the doctor that he would contact him when he was ready for the surgery. (Tr. at 106.)

---

[2]Hyperlipidemia is defined as "the presence of high levels or concentration of lipids (fats) in the blood." 3 J. E. Schmidt, M.D., Attorneys' Dictionary of Medicine H-236.

[3]Tinel's sign is defined as "a tingling sensation at the end of a limb produced by tapping the nerve at a site of compression or injury." 6 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE T-141.

[4]Phalen's test is defined as "a test for carpal tunnel syndrome. The patient flexes the wrist for 1 minute. Carpal tunnel syndrome is confirmed if the patient experiences a tingling sensation that radiates into the thumb, index finger and the middle and lateral half of the ring finger." 4 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE P-208.

Plaintiff was seen by Dr. Niedbalski again on June 4, 2001, for a recheck of his lipids, at which time there was a significant improvement in his cholesterol readings. (Tr. at 126.) On July 30, 2001, Plaintiff was seen by Dr. Niedbalski due to bilateral arm pain radiating up to his elbows. Plaintiff reported having had carpal tunnel surgery eight years earlier and that he was getting physical therapy through General Motors. Plaintiff complained of considerable pain at night and was given medication. Tinel's sign was positive for both wrists. Nerve function in the arms was normal, and the doctor found no evidence of muscle atrophy. Plaintiff was encouraged to wear his wrist splints at night to help with the pain. (Tr. at 125.)

Plaintiff was seen by Dr. Thomas Beird, M.D., on August 27, 2001. Plaintiff continued to complain of numbness, tingling, burning, and aches and pains in both hands. Grip strength and pinch strength were diminished. The doctor reported atrophy in the thenar muscles of both arms, positive Tinel and Phalen signs, and "exquisite" pain over both elbows during testing. The doctor's impressions were bilateral repetitive strain phenomenon, carpal tunnel syndrome, bilateral tennis elbow, wrist tendinitis,[5] and first CMB joint osteoarthritis. Plans for treatment were discussed. (Tr. at 102.)

Plaintiff was seen on September 10, 2001, by Dr. Jeffrey Levin, M.D., for a neurological evaluation. Plaintiff was suffering with low back pain and bilateral hand pain. On examination, Plaintiff had some mild cervical paraspinal muscle spasm. He also exhibited weakness in the thenar muscles, and positive Tinel's and Phalen's signs in both wrists and the right elbow. Plaintiff reported pain with straight leg raising, and some weakness was seen in the back. The doctor found decreased sensation in the right foot. The doctor's diagnoses was bilateral carpal tunnel syndrome,

---

[5]Tendinitis is defined as an "inflammation of a tendon or tendons." 5 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE T-44.

probable right cubital tunnel syndrome,[6] and lumbar radiculopathy,[7] more prominent on the right. The doctor ordered an MRI of the lumbosacral spine and continued Plaintiff on work restrictions. (Tr. at 160.)

The MRI of Plaintiff's spine, taken on September 14, 2001, showed no spinal stenosis,[8] but did show a mild bulge with spondylosis[9] caused by mild left L4-L5 and right L5-S1 narrowing. (Tr. at 159.)  An electromyogram report dated October 4, 2001, showed severe bilateral carpal tunnel syndrome, right cubital tunnel syndrome, C5 through 7 radiculopathy, left greater than right, and L4-5 radiculopathy, right greater than left.  (Tr. at 158.)

On October 25, 2001, Plaintiff was seen at Perry Family Practice for his high blood pressure and cholesterol.  Plaintiff's blood pressure was 150/88, and the remaining measures were unchanged from previous appointments.  The doctor diagnosed hypertension, hyperlipidemia and low back pain.  The doctor recommended vitamin B6 to see if that would help with numbness.  (Tr. at 122.)

On December 10, 2001, Plaintiff underwent carpal tunnel release surgery, performed by Dr. Thomas Beird.  (Tr. at 100-01.)  On January 2, 2002, Plaintiff was seen by Dr. Levin for a follow-up exam.  The doctor advised that Plaintiff stay off work due to his chronic problems.  Plaintiff

---

[6]Cubital tunnel syndrome is defined as "the condition resulting from a compression or injury of the ulnar nerve at the elbow.  It is marked by pain and numbness in the medial side of the forearm and hand."  2 J.E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE C-516.

[7]Radiculopathy is defined as "any disease or abnormality of a dorsal or ventral (sensory or motor) spinal nerve root from the point where it merges with the spinal cord (or brain stem) to the point where it joins its companion root (a motor or a sensory) to form a spinal nerve."  5 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE R-10.

[8]Stenosis is defined as the "abnormal narrowing of a body passage, opening, canal, or duct.  It is usually due to an overgrowth or shrinkage of the tissue around it."  5 J.E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE S-292.

[9]Spondylosis is defined as "an abnormal fusion or growing together of two or more vertebrae."  5 J.E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE S-264.

8

was still having pain in his hand, although it was healing nicely.  He continued to have pain with straight leg raising bilaterally and still had a positive Tinel's sign at the right elbow.  Plaintiff was referred for physical and occupational therapy.  (Tr. at 152.)

On January 3, 2002, Plaintiff underwent an MRI of the cervical spine. The MRI showed no abnormal signal identified within the spinal cord and no central canal or neural foraminal stenosis. The cervical spine was without evidence for herniated intervertebral discs.  (Tr. at 113.)  There was a small bone spur at C5-C6 with borderline abutment of the ventral spinal cord.  (*Id.*)

On January 21, 2002, Dr. Beird noted that Plaintiff had "had no improvement in the median innervation on the left side.  Pillar pain remains rather significant.  He had a severe problem and I expect this will continue to improve, although albeit slowly."  (Tr. at 99.)

On April 25, 2002, Plaintiff was seen at the Perry Family Practice for his annual physical examination.  Blood work was normal except for elevated triglycerides.  (Tr. at 116.)  Plaintiff was given prescriptions, and the doctor noted that Plaintiff was scheduled to see his neurosurgeon.  (*Id.*)

On May 2, 2002, Plaintiff underwent an EMG due to concern of tarsal tunnel syndrome.[10] Plaintiff was complaining of symptoms in the left foot, and nerve conduction studies did suggest tarsal tunnel syndrome in the left foot and leg.  The reviewing physician noted Plaintiff's report of prior trauma to the area.  (Tr. at 150.)

On July 16, 2002, Dr. Beird stated that Plaintiff had "achieved no improvement from the surgery." (Tr. at 99.)  Plaintiff still had numbness on the left side with marked wrist and elbow pain.  Tinel's and Phelan's signs remained positive, "vigorously so" in both arms, and both arms

---

[10]Tarsal tunnel syndrome is defined as "a disorder of the foot marked by pain and loss of sensation in the great toe and the medial or inner side of the foot."  5 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE T-21.

exhibited "significant" thenar muscle atrophy.  (*Id.*)  Dr. Beird felt that there was a guarded outcome due to the longstanding nature of the problem and the severity of involvement.  Dr. Beird stated: "I do not believe he should return to work what-so-ever."  (*Id.*)  One week later, however, Dr. Beird completed a note to Plaintiff's employer, stating that Plaintiff could return to work with restrictions of lifting no more than three pounds, no vibratory tools, no repetitive gripping, twisting, turning, pushing, pulling, grasping, or squeezing with either hand.  (Tr. at 166.)

Plaintiff was seen at Perry Family Practice on July 29, 2002, complaining of lightheadedness and a feeling of being off balance.  The doctor assessed labyrinthitis,[11] prescribed medication, and recommended that Plaintiff change positions slowly.  The doctor stated that if Plaintiff continued to have symptoms, he would refer him to an otolaryngologist.  (Tr. at 171.)

Plaintiff returned to Dr. Levin on August 12 and November 11, 2002.  Plaintiff was not working at the time.  His blood pressure was 130/90 and 126/78.  On examination, Plaintiff had pain with a positive Tinel's and Phalen's sign at both wrists.  The doctor found mild paraspinal muscle spasms, and weakness of the thenar muscles which restricted Plaintiff's ability to move his fingers.  Straight leg raising produced pain, and mild weakness was again seen in the lower back. Plaintiff walked with a limp. (Tr. at 146.)

Plaintiff was seen at Perry Family Practice on February 20, 2003, to discuss medications. His blood pressure was 140/86, and he was assessed with hypertension and given samples of a new medication.  (Tr. at 169.)

Plaintiff was again seen by Dr. Levin on May 12, 2003.  Plaintiff still complained of numbness in his left hand and intermittent numbness in both feet which was usually worse at night.

---

[11]Labyrinthitis is defined as an "inflammation of the labyrinth of inner ear."  The labyrinth is defined as "the deepest of three parts into which the ear mechanism is divided."  3 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE L-8-9.

Plaintiff's blood pressure was 140/78.  The results of the doctors physical examination were consistent with his earlier findings.  Plaintiff was referred to Dr. Andrew Cohen for opinions regarding his tarsal tunnel syndrome and was given pain medication.  (Tr. at 190.)

Plaintiff was seen at the Perry Family Practice for examination on May 28, 2003.  Plaintiff requested a routine cardiac exercise stress test.  He stated that he had been able to exercise at home on a treadmill, but that it was limited by lower back pain.  The doctor ordered a routine colonoscopy and scheduled a treadmill test.  He was given medication refills.  (Tr. at 167.)

At the administrative hearing, a vocational expert (VE) testified.  He characterized Plaintiff's prior work as semi-skilled and between light and medium in exertion.  (Tr. at 215.)  In response to a hypothetical question presuming a person of Plaintiff's circumstances who had "a residual functional capacity for a range of light, skilled work," (*id.*) which did not require repetitive grasping, pushing or pulling, or the use of vibrating tools or working near moving machines or unprotected heights, the VE identified approximately 18,000 general office clerk, collator operator, and hotel and restaurant host positions consistent with these conditions.  (*Id.*)  When asked to presume that Plaintiff's testimony was "credible and supported by the medical evidence," the VE found that such a person could not undertake any vocationally relevant work.  (Tr. at 216.)

E.    **ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability.  (Tr. at 23.)  At step two, the ALJ found that Plaintiff's bilateral carpal tunnel syndrome, cubital tunnel syndrome, and lumbar radiculopathy were "severe" within the meaning of the second sequential step.  (*Id.*)  At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (*Id.*)  At step

four, the ALJ found that Plaintiff could not perform his past relevant work.  (*Id.*)  At step five, the

ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs available

in the national economy, such as general office clerk, collator/operator, and hostess.  (Tr. at 23-24.)

### F.    Analysis and Conclusions

### 1.    Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a

significant range of light work.  (Tr. at 23.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting
> or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may
> be very little, a job is in this category when it requires a good deal of walking or
> standing, or when it involves sitting most of the time with some pushing and pulling
> of arm or leg controls. To be considered capable of performing a full or wide range
> of light work, you must have the ability to do substantially all of these activities.  If
> someone can do light work, we determine that he or she can also do sedentary work,
> unless there are additional limiting factors such as loss of fine dexterity or inability
> to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his

application of the Commissioner's five-step disability analysis to Plaintiff's claim.  I turn next to

the consideration of whether or not substantial evidence supports the ALJ's decision.

### 2.    Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner.

The Commissioner argues that substantial evidence supports the ALJ's findings and "[t]o the

extent the court concludes that a legal error was committed, plaintiff is entitled, at most, to a

remand for further articulation of the Administrative Law Judge's (ALJ's) reasoning."  (Def.'s

Mot., Dkt. 16 at 1.)  In this circuit, if the Commissioner's decision is supported by substantial

evidence, it must be affirmed even if the reviewing court would decide the matter differently,

*Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

It is well settled in this circuit that a treating physician's opinion, when based upon objective evidence, is accorded significant weight. If adequately supported by objective findings, and if uncontradicted, the physician's opinion is entitled to complete deference. *Harris v. Heckler*, 756 F.2d 431 (6th Cir. 1985); *King v. Heckler*, 742 F.2d 968 (6th Cir. 1984); *Lashley v. Sec'y. of Health & Human Servs.*, 708 F.2d 1048 (6th Cir. 1983); *Reed v. Sec'y. of Health & Human Servs.*, 804 F. Supp. 914 (E.D. Mich. 1992). In this case, every physician who gave Plaintiff a neurological examination reported Tinel and Phalen signs, as well as other tests positive for carpal tunnel syndrome. (Tr. at 99, 102, 107, 125, 146, 160.) Electromyographic testing found evidence of severe carpal tunnel syndrome. (Tr. at 158.) The surgeon who performed the carpal tunnel release surgery unequivocally stated on more than one occasion that the surgery did not improve Plaintiff's condition. (Tr. at 99.) Moreover, subsequent to Plaintiff's carpal tunnel release surgery, his physical condition appeared to deteriorate. Dr. Levin found evidence of cubital tunnel syndrome in Plaintiff's leg, as well as lumbar and cervical radiculopathy. (Tr. at 146 & 190.) In addition, both before and after the surgery, multiple physicians reported weakness and atrophy in the thenar muscles of Plaintiff's arms. (Tr. at 102, 160.) By July 2002, Dr. Beird reported that Plaintiff's arms exhibited "significant" thenar muscle atrophy. (Tr. at 166.) By November 2002, Dr. Levin reported that the weakness in Plaintiff's thenar muscles had advanced to the point where Plaintiff's ability to move his fingers was restricted. (Tr. at 146.) In addition, on numerous occasions, Plaintiff's treating physicians found pain on straight leg raising and weakness in the back. (Tr. at 146, 152, 160.) Furthermore, Plaintiff was reported to be limping. (Tr. at 146.)

Although Dr. Beird's July 2002 opinion to the effect that Plaintiff could never return to work is arguably a vocational opinion outside the expertise of the ALJ (*see Casey v. Sec'y of Health & Human Servs.*, 987 F. 2d 1230, 1234-35 (6th Cir. 1993)), the doctor's later opinion limiting Plaintiff to lifting no more than three pounds, along with numerous other restrictions (Tr. at 166) is, I suggest, consistent with the objective medical findings of not only Dr. Beird, but of every other treating physician who gave Plaintiff a neurological examination.  In light of these essentially unanimous medical opinions, which not only corroborate each other, but also demonstrate a deterioration in Plaintiff's physical condition, I suggest that it was error for the ALJ to disregard these opinions and conclude that Plaintiff was capable of returning to light exertion work.

I next suggest that the ALJ also erred in failing to fully credit Plaintiff's allegations and testimony of descriptions of disabling pain.  Rather, I suggest that the evidence of record fully corroborates Plaintiff's assertions of disabling physical pain. *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847 (6th Cir. 1986); *McCormick v. Sec'y of Health & Human Servs.*, 666 F. Supp. 121 (E.D. Mich. 1987).  Nor does Plaintiff's request for a routine cardiac exercise stress test (Tr. at 167) undermine this conclusion.  A claimant's ability to undertake activities such as household chores is not indicative of his or her ability to engage in substantial gainful employment activity. *Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967).  "These tasks can be performed intermittently . . . and do not require the sustained effort necessary for any substantial, sustained and regular employment."  *Fulwood v. Heckler*, 594 F. Supp. 540, 543 (D.C.D.C. 1984).

This same error, I suggest, also renders fatally flawed the ALJ's hypothetical questions to the VE.  *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 481 (6th Cir. 1988);

14

*Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Once it has been determined that the Commissioner's administrative decisions are not supported by substantial evidence, a district court faces a choice. It may either remand the case to the Commissioner for further proceedings or direct the Commissioner to award benefits. In this circuit, the latter option requires that the "proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking[,]" *Mowery v. Heckler* 771 F.2d 966, 973 (6th Cir. 1985); or that "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits[.]" *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Under these standards, I suggest that remand for an award of benefits is appropriate, rather than the remand for further administrative proceedings requested by the Commissioner.

## III.   **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*,

829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

 s/ *Charles E Binder*

CHARLES E. BINDER
Dated: January 6, 2006                    United States Magistrate Judge

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on James Brunson and Mikel Lupisella and served in the traditional manner on Hon. David M. Lawson.

Dated:  January 6, 2006                    By     s/Mary E. Dobbick
                                                Secretary to Magistrate Judge Binder