UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DONALD DOMBY,

        Plaintiff,                          Case Number 05-10090-BC
                                                     Honorable David M. Lawson
v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____/

**OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, GRANTING IN PART DEFENDANT'S "EX PARTE" MOTION TO REMAND, GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, REVERSING THE COMMISSIONER'S FINDINGS, AND REMANDING FOR AN AWARD OF BENEFITS**

The plaintiff filed the present action on March 23, 2005, seeking review of the Commissioner's decision denying the plaintiff's claim for a period of disability and disability insurance benefits under Title II of the Social Security Act. The case was referred to United States Magistrate Judge Charles E. Binder pursuant to 28 U.S.C. § 636(b)(1)(B) and E.D. Mich. LR 72.1(b)(3). Thereafter, the plaintiff filed a motion for summary judgment to reverse the decision of the Commissioner and award him benefits or in the alternative remand the matter for further proceedings. The defendant filed an "ex parte" motion to remand for additional proceedings. Magistrate Judge Binder filed a report and recommendation on January 6, 2006, recommending that the plaintiff's motion for summary judgment be granted, the defendant's motion to remand also be granted, the findings of the Commissioner be reversed, and the matter be remanded for an award of benefits. The defendant filed timely objections to the report and recommendation, and this matter is now before the Court.

The Court has reviewed the file, the report and recommendation, and the defendant's objections, and has made a *de novo* review of the administrative record in light of the parties' submissions. The defendant makes two objections. First, it claims that if the plaintiff is entitled to benefits, those benefits may be awarded only as of his fiftieth birthday because the plaintiff has made no allegation or argument that he is entitled to benefits prior to that time. Second, the defendant argues that the plaintiff is not entitled to any benefits at all because the medical opinions contained in the record are not unanimous, at least with respect to the plaintiff's ability to meet the walking and standing requirement for work at the "light" exertional level. The defendant appears to concede that the matter should be remanded to the agency for a determination of whether the plaintiff can perform a significant number of light jobs.

The plaintiff, Donald Domby, presently fifty-three years old, applied for a period of disability and disability insurance benefits on March 27, 2002 when he was forty-nine years old. He had worked for General Motors for twenty-eight years as a welder and a painter. The plaintiff completed high school. The plaintiff last worked on October 5, 2001, the date he alleges he became disabled as a result of back problems and carpal tunnel syndrome. He has a history of neck, shoulder, and back pain. Doctors also have diagnosed bilateral carpal tunnel syndrome.

In his application for disability insurance benefits, the plaintiff alleged that he was unable to work due to carpal tunnel syndrome, right cubital tunnel syndrome, and lumbar radiculopathy. On May 20, 2004, the plaintiff, then fifty-two years old, appeared before ALJ Thomas L. Walters, who filed a decision on August 25, 2004, in which he found that the plaintiff was not disabled. The ALJ reached that conclusion by applying the five-step sequential analysis prescribed by the Secretary in 20 C.F.R. § 404.1520. The ALJ concluded that the plaintiff had not engaged in

substantial gainful activity since October 5, 2001, the alleged disability onset date (step one); the plaintiff suffered from substantial impairments consisting of bilateral carpal tunnel syndrome, cubital tunnel syndrome, and lumbar radiculopathy, which were "severe" within the meaning of the Social Security Act (step two); the plaintiff did not have an impairment or combination of impairments that met or equaled a listing in the regulations (step three); and the plaintiff could not perform his previous work, which the ALJ found to be semi-skilled and require light-to-medium exertion (step four).

In applying the fifth step, the ALJ concluded that the plaintiff had the residual functional capacity to perform a significant range of light work because, the ALJ found, he could lift and carry a maximum of twenty pounds and ten pounds frequently; walk/stand for six hours in an eight-hour workday; undertake some pushing and pulling; and sit for up to two hours during the workday. However, the plaintiff was to refrain from using vibrating tools, engaging in repetitive pushing, pulling, gripping, or grasping, performing overhead work, work at unprotected heights, and work involving more than unskilled duties. Relying on the testimony of a vocational expert, the ALJ found that there were a significant number of jobs in the national economy that fit within these limitations including work as a general office clerk, collator/operator, and host. Based on that finding and using the Medical Vocational Guidelines (the "grid rules") found at 20 C.F.R. Pt. 404, Subpt. P, App. 2, section 202.21 as a framework, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act. Following the decision by the ALJ, the plaintiff appealed to the Appeals Council, which denied the plaintiff's request for review on March 23, 2005.

The magistrate judge suggested that the ALJ erred by failing to give due weight to the plaintiff's treating physicians, specifically Dr. Jeffrey Levin and Dr. Thomas Beird, both of whom opined that the plaintiff's exertional capacity was significantly less than found by the ALJ. These physicians reached their conclusions after a course of treatment, appropriate clinical examinations, and suitable medical testing. The magistrate judge also found that the ALJ erred by discounting the plaintiff's testimony concerning disabling pain because the medical evidence fully corroborates the plaintiff's assertions. Finally, the magistrate judge concluded that the ALJ's errors in assessing the plaintiff's residual functional capacity undermined the validity of the hypothetical question posed to the vocational expert. The defendant's objections address the first finding but not the second or the third.

The plaintiff has the burden to prove that he is disabled and therefore entitled to benefits. *Boyes v. Sec'y of Health & Human Servs.,* 46 F.3d 510, 512 (6th Cir. 1994); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990).

Under 42 U.S.C. § 423(d)(1)(A) & (B), a person is disabled if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" and the impairment is so severe that the person "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful activity which exists in the national economy." Further, "[a] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(1)(C).

To determine disability, the Commissioner has prescribed the five-step process noted above and set forth in 20 C.F.R. § 404.1520. However, if the plaintiff has satisfied his burden through the first four steps of the analytical process, the burden shifts to the Commissioner to establish that the plaintiff possesses the residual functional capacity to perform other substantial gainful activity. *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). *See also Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980). "To meet this burden, there must be a finding supported by substantial evidence that plaintiff has the vocational qualifications to perform specific jobs." *Varley,* 820 F.2d at 779 (internal quotes and citations omitted).

The ALJ concluded that the plaintiff had the residual capacity to perform a significant range of light work. According to 20 C.F.R. § 404.1567(b), "light work"

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

This finding was made, in turn, based on the determination that the plaintiff could lift and carry 20 pounds and carry 10 pounds frequently. *See* Tr. at 22. However, both Dr. Levin and Dr. Beird opined that the plaintiff could carry significantly less than that: Dr. Levin limited the plaintiff to lifting three pounds, Tr. at 192; Dr. Beird also limited him to three pounds, Tr. at 166; and the General Motors plant physician restricted the plaintiff to lifting five pounds. Tr. at 165.

The magistrate judge suggested that the "treating physician rule" should have governed the ALJ's determination of the plaintiff's residual functional capacity. The Rule promulgated by the

Secretary states that: "more weight [will be given] to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. § 404.1527(d)(2).  The Sixth Circuit has consistently applied this rule.  A treating physician's opinion should be given greater weight than those opinions of consultative physicians who are hired for the purpose of litigation and who examine the claimant only once.  *See Jones v. Sec.'y of Health & Human Servs.,* 945 F.2d 1365, 1370 & n.7 (6th Cir. 1991); *Farris v. Sec'y of Health & Human Servs.,* 773 F.2d 85, 90 (6th Cir. 1985).  If a treating physician's opinion is not contradicted, complete deference must be given to it.  *Walker v. Sec'y of Health & Human Servs.,* 980 F.2d 1066, 1070 (6th Cir. 1992); *King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1984).  However, a treating physician's opinion may be rejected if there is good reason to do so.  *Hall v. Bowen,* 837 F.2d 272, 276 (6th Cir. 1988). The Sixth Circuit has held that treating physicians' opinions "are only given such deference when supported by objective clinical evidence." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 378, 390 (6th Cir. 2004) (citing *Jones v. Comm'r of Soc. Sec.*, 336 F. 3d 469, 477 (6th Cir. 2003).  Where a treating physician renders an opinion using legal language as opposed to medical terminology, the Court may likewise reject it if it is not supported by clinical evidence in the record. *See Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1234-35 (6th Cir. 1993).

      The magistrate judge observed that the ALJ discussed his reasons for rejecting Dr. Levin's opinion, but the ALJ never gave a rationale for discounting Dr. Beird's opinion as to the lifting restrictions.  The defendant has acknowledged this defect in the ALJ's reasoning.  The ALJ also did

not discuss or give reasons for rejecting the General Motors plant physician's opinion, either. Actually, a close reading of the ALJ's decision reveals that the ALJ discussed only his reasons for rejecting Dr. Levin's opinion that the plaintiff should not return to work; the ALJ did not explain why he did not accept Dr. Levin's assessment of the plaintiff's lifting restrictions. *See* Tr. at 21-22.

The Sixth Circuit recently has held that reversal is required in a Social Security disability benefits case where the ALJ rejects a treating physician's opinion as to the restrictions on a claimant's ability to work and fails to give good reasons for not giving weight to the opinion. *Wilson v. Comm'r of Social Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). There, the court stated that "pursuant to [20 C.F.R. § 404.1527(d)(2)], a decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* at 544 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996)). There, error is not harmless when the reviewing court is hampered by the lack of explanation and the rejected evidence could very well establish disability, as here. The Court agrees, therefore, with the magistrate judge's conclusion that the ALJ's determination of the plaintiff's residual functional capacity is erroneous.

The defendant argues, however, that even if one accepts the treating physicians' lifting restrictions, the plaintiff still may be able to perform some light work because he can walk and stand for a significant portion of the work day and operate foot controls. This argument has some force. There can be no question that the plaintiff is unable to perform the *full* range of light work. "To be considered capable of performing a full or wide range of light work, you must have the ability to do

*substantially all* of these activities." 20 C.F.R. § 404.1567(b) (emphasis added).  However, the ability to perform *some* of the activities described by the Secretary permits a conclusion that a claimant may have the capacity to perform a limited range of work within that exertional level.  *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595-96 (6th Cir. 2005) (noting that although the plaintiff  "claims that her shoulder ailment prevents her from meeting the lifting requirements for light work[, s]he does not claim, nor could she credibly do so, that the shoulder ailment casts any doubt on her ability to meet the walking and/or sitting requirements for light work"); *cf. Patton v. Schweiker*, 697 F.2d 590, 592-93 (5th Cir. 1983) (noting that the "light work" regulation concerning use of extremities "is written in the disjunctive, requiring 'some pushing and pulling of arm *or* leg controls'") (quoting 20 C.F.R. § 416.967(b)).

Plaintiff Domby argues that since he cannot perform work at the "light" exertional level, he must be evaluated by grid rule 201.14, which applies to a person who can perform a full range of sedentary work and directs a finding of "disabled" for Domby, once he reaches his fiftieth birthday. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.21.  However, when a person cannot perform all the functions at a particular exertional level, the regulations prescribing application of the grid rules do not call for dropping the claimant down one level.  As the Sixth Circuit has explained:

> In general, where the characteristics of the claimant exactly match the characteristics in one of the rules, the grid determines whether significant numbers of other jobs exist for the person or whether that person is disabled. . . .  However, in a situation like Wright's, whose impairments do not precisely match any specific rule, her residual functional capacity (light work) is used as the appropriate framework to determine whether she is disabled. . . .  Wright misapprehends the analysis that is applicable to her situation.  Essentially, Wright wants to use the fact that she is not capable of doing all of the jobs in the light work category due to her nonexertional limitation (her left hand impairment) to drop her category level down to sedentary.  As a result, she argues that the ALJ should have used Rule 201.09, pertaining to sedentary work, rather than Rule 202.10, pertaining to light work.  But that is not how the process works.  There is no support for her argument that her nonexertional

> limitation allows her to decrease the level of her exertional capacity from light to sedentary.

*Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003).

Even when *exertional* limitations, such as lifting restrictions, prevents a finding that a claimant can preform a full range of work at that level, there is no automatic reduction to the next level. Rather, the Secretary has described the appropriate analytical process in Social Security Ruling 83-12:

> Where an individual's exertional RFC does not coincide with the definition of any one of the ranges of work as defined in sections 404.1567 and 416.967 of the regulations, the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability. The adjudicator will consider the extent of any erosion of the occupational base and access its significance. In some instances, the restriction will be so slight that it would clearly have little effect on the occupational base. . . . Where the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource.

SSR 83-12. The Secretary has given a specific example of the process to be used when exact application of the grid rules is not possible:

> 2. If the exertional level falls between two rules which direct opposite conclusions, i.e., "Not disabled" at the higher exertional level and "Disabled" at the lower exertional level, consider as follows:
>     a. An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."
>     b. On the other hand, if the exertional capacity is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of "Disabled."
>     c. In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, VS [vocational specialist] assistance is advisable for these types of cases.

*Ibid.*

The Ruling thus explains that in some instances it may be appropriate to apply the lower grid rule, that is not always the case, and in close cases testimony from a vocational expert is required. The defendant contends that this decision should be made by the ALJ in the first instance, and the Court agrees. "If a court determines that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994). There has been no determination of the impact of the plaintiff's lifting restrictions of three pounds on his capacity to perform light work, or the impact of that finding on which grid rule should be used.

However, the findings with respect to the lifting restrictions do not answer the other defects addressed by the magistrate judge. As noted above, he also determined that the ALJ "erred in failing to fully credit Plaintiff's allegations and testimony of descriptions of disabling pain." R&R at 14. The ALJ rejected that testimony in part because the plaintiff testified to an ability to engage in household activities like shopping, driving, cooking, cleaning, reading, and visiting with friends, Tr. at 21, but this evidence does not establish an ability to do work. A claimant's ability to do housework, drive, and visit with friends is not indicative of his or her ability to engage in substantial gainful activity. *See Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967); *Smith v. Califano*, 637 F.2d 968, 971-72 (3d Cir. 1981). "These tasks can be performed intermittently . . . and do not require the sustained effort necessary for any substantial, sustained and regular employment." *Fulwood v. Heckler*, 594 F. Supp. 540, 543 (D.C. 1984).

More importantly, the defendant did not specifically object to this finding by the magistrate judge. General objections to a magistrate judge's report and recommendation do not preserve all

-10-

issues for review. "[T]he failure to file specific objections to a magistrate's report constitutes a waiver of those objections." *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). Since the plaintiff did not challenge the finding that the ALJ's credibility determination was erroneous, the argument is waived. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985) (holding that the failure to object to the magistrate judge's report releases the Court from its duty to independently review the motion); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). The Court adopts the conclusion that the ALJ improperly rejected the plaintiff's testimony that he could not perform work due to disabling pain.

That determination in turn affects the vocational expert's hypothetical question responses. The ALJ based his conclusion that there were jobs in significant number in the national economy within the plaintiff's capacity on the vocational expert's response to a question that asked him to assume the plaintiff could perform a limited range of light work, as noted earlier. Tr. at 215-16. The factual premise for that question has been determined to be erroneous. It is well established that assessment of residual functional capacity for work must be made only after all of a claimant's limitations have been taken into account. 20 C.F.R. § 416.945. Further, a hypothetical question posed to a vocational expert must include a "complete assessment of [the claimant's] physical and mental state and should include an accurate portrayal of her individual physical and mental impairments." *Howard v. v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (internal quotes and alterations omitted) (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)).

On the other hand, the vocational expert testified:

Q. If I asked you to assume that I found the Claimant's testimony to be credible and supported by the medical evidence, in your opinion, could such a person perform these jobs on a full time basis?
A. No, I don't believe so.
Q. And what factors and testimony would you cite as vocationally relevant?
A. Well I believe, again, the issue becomes one of pain, along with the difficulties that he describes with respect to the use of his upper extremities.

Tr. at 216. This testimony establishes that the plaintiff is not able to perform substantial gainful activity, given the unobjected-to determination noted above that the plaintiff's complaints of pain should be fully credited and are consistent with the medical evidence.

Based on the foregoing, the Court must agree with the magistrate judge that substantial evidence fails to support the ALJ's finding. Once the determination has been made that the Commissioner's decision is not supported by substantial evidence, the Court must decide whether further fact-finding is required. "[I]f all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits," this Court may remand for an award of benefits. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994). *See also Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir. 1985) ("In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking.").

The vocational expert's response to the hypothetical question quoted above establishes that the plaintiff is disabled within the meaning of the Social Security Act regardless of the application of grid rules, specifically Rule 210.14, and therefore regardless of his age. It is appropriate, therefore, to remand for an award of benefits.

After a *de novo* review of the entire record and the materials submitted by the parties, the Court concludes that the magistrate judge properly reviewed the administrative record and applied the correct law in reaching his conclusion. The Court agrees with the conclusion that substantial evidence does not support the ALJ's determination that the plaintiff is capable of performing gainful activity.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt # 17] is **ADOPTED.**

It is further **ORDERED** that the plaintiff's motion for summary judgment [dkt # 9] is **GRANTED.**

It is further **ORDERED** that the defendant's motion to remand [dkt # 16] is **GRANTED IN PART**. The findings of the Commissioner are **REVERSED**, and the matter is **REMANDED** to the Commissioner for an award of benefits.

                                                s/David M. Lawson
                                                DAVID M. LAWSON
                                                United States District Judge

Dated: July 21, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 21, 2006.

                                      s/Tracy A. Jacobs
                                      TRACY A. JACOBS